Commonwealth ex rel. Benedict et al.,
Appellants, *v.* Cliff.

428

Submitted April 17, 1972.   Before JONES, C. J.,
EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MAN-
DERINO, JJ.

*D. Patrick Zimmerman,* former Assistant Public
Defender, for appellants.

No appearance was entered nor brief submitted, for appellee.

OPINION BY MR. JUSTICE NIX, May 4, 1973:

The appeals in this matter arise as a result of the Lancaster County Court of Common Pleas denial and dismissal of a petition for a Writ of Habeas Corpus which was brought on behalf of the four appellants, then inmates of the Lancaster County Prison. Each of the appellants had been sentenced for conviction of various unrelated criminal charges at different times by the Court of Common Pleas and were serving their respective sentences in the county prison when the petitions were filed. One of the appellants received only a sentence of a fine and cost of prosecution, while other appellants received in addition thereto a jail term. In each case the appellants had been immediately confined until the total of their sentence had been complied with without an opportunity at liberty to pay the fine and costs before its conversion into a jail term in default of such payments. From the order of the Lancaster County Court of Common Pleas the appellants sought relief in this Court and we allowed these appeals[1] and released appellants upon their own recognizance pending the proceedings before this court.[2]

---

[1] This case is before us under special allowance pursuant to Section 205 of the Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P. L. 673, art. II, 17 P.S. §211.205 (Supp. 1972-73), because of the immediate public importance of the legal principles herein. Normally the appeal would have been within the jurisdiction of the Superior Court. Appellate Court Jurisdiction Act of 1970, *supra*, 17 P.S. §211.302 (Supp. 1972-73).

[2] We have received notice from the Solicitor for the Board of Prison Inspectors of Lancaster County and the attorney for appellee Warden Cliff that he would not enter an appearance nor participate in argument before this Court. We were likewise informed that the District Attorney of Lancaster County did not wish to participate in these proceedings.

By further order of this Court the appellants were permitted to proceed in forma pauperis.

Appellant Gary Benedict was adjudged guilty of Operating a Motor Vehicle while Intoxicated and Failure to Stop and Identify on March 24, 1971 and received a sentence of Two Hundred ($200.00) Dollars plus costs of prosecution and three (3) months imprisonment, on each charge, and ordered to stand committed until the sentence had been complied with. The sentences were made to run consecutively.

Appellant Belva Jean Baker was adjudged guilty of the offense of Aggravated Assault and Battery on June 25, 1971 and sentenced to a fine of One Hundred ($100.00) Dollars plus the costs of prosecution and six (6) months imprisonment, and ordered to stand committed until the full sentence had been served.

Appellant Steven Root was adjudged guilty of Fornication and Bastardy on September 17, 1971 and was ordered to pay Seven Hundred and Eighteen and .76/100 ($718.76) Dollars representing lying in expenses, a support order dating from the birth of the child and the costs of prosecution. Mr. Root was committed forthwith to remain until the judgment of sentence was complied with.[3]

On March 12, 1971, appellant Wilkerson Woods was convicted of Operating a Motor Vehicle while Intoxicated and Failing to have an Operator's License and received a sentence of Two Hundred ($200.00) Dollars fine plus costs of prosecution and three (3) months im-

---

[3] After a finding of bastardy, where an order is given for lying in expenses and maintenance of the child, in lieu of or in addition to a fine, the usual practice in Pennsylvania is to permit periodic payments consistent with the defendant's financial background. In the instant case, this practice was not followed and a lump sum payment was ordered to be paid immediately without a consideration of the defendant's ability to comply with the order. See Act of June 24, 1939, P. L. 872, §506, as amended, 18 P.S. §4506.

prisonment for the former offense and a fine of Two Hundred ($200.00) plus costs of prosecution and six (6) months imprisonment on the latter offense. The sentences were made consecutive and the appellant was committed forthwith.

The appellants contend that the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution prohibits a state court from incarcerating a defendant for failure to pay a fine and/or cost without an opportunity at liberty to pay the fine and/or cost where immediate compliance is prevented by indigency. The appellants state that it has been the consistent policy of the Courts of Lancaster County where defendants are unable to pay fine and cost, whether a prison sentence is also given or not, to immediately commit in default and require the individual to serve three (3) months for each fine imposed prior to allowing the defendant to sign a Pauper's Oath and gain his or her release.[4] The defendant is allowed to work on a "Work Release Program" (called in this county "Outmate Program") while he is serving his default sentence.[5] The term of the "Work Release Program" is for a period of three (3) months for each fine and cost that the defendant has received on each indictment. We are called upon to determine whether such a procedure is permitted by the laws of this Commonwealth and consistent with the mandates of the Constitution of the United States.[6]

[4] Act of June 16, 1836, P. L. 729, §47, 39 P.S. §323.

[5] Act of August 13, 1963, P. L. 774, §1, *as amended*, November 26, 1968, P. L. 1103, §1, 19 P.S. §1179.1 (Supp. 1972-73).

[6] On October 27, 1971, the date of the filing of the petition for Writ of Habeas Corpus, all of the appellants, with the exception of Wilkerson Woods, were confined as a result of their fine and costs being converted into a prison term. Appellant Woods' original jail term did not expire until four days later. While this may have been justification for dismissing his petition as premature, this issue was neither raised nor considered in the court below.

As early as *Griffin v. Illinois*, 351 U.S. 12 (1956), the United States Supreme Court indicated its concern with respect to discrimination caused by those unable to meet the expenses of litigation. In holding that the equal protection clause required that an indigent defendant in a criminal case was entitled to be furnished the trial transcript at public expense, the Court stated "there can be no equal justice where the kind of trial a man gets depends on the amount of money he has." 351 U.S. at 19. Recent decisions of the Supreme Court have unquestionably demonstrated that the desire to eliminate inequities in the criminal process caused by indigency has if anything heightened rather than diminished. As noted in *Williams v. Illinois*, 399 U.S. 235 (1970) : "Subsequent decisions of this Court have pointedly demonstrated that the passage of time has heightened rather than weakened the attempts to mitigate the disparate treatment of indigents in the criminal process." 399 U.S. at 241 (footnote omitted). In *Williams* the Court determined that where the State had "defined the outer limits of incarceration necessary to satisfy its penological interests and policies, it may not then subject a certain class of convicted defendants to a period of imprisonment beyond the statutory maximum solely by reason of their indigency." 399 U.S. at 242. The Court therefore held that a State may not constitutionally imprison beyond the maximum sentence fixed by statute a defendant who is financially unable to pay a fine. In *Morris v. Schoonfield*, 399 U.S. 508 (1970), four members of the Court in a concurring opinion stated that "the same constitutional defect condemned in Williams also inheres in jailing an indigent for failing to make immediate payment of any fine, whether or not the fine is accompanied by a jail term and whether or not the jail term of the indigent extends beyond the maximum term that may be

imposed on a person willing and able to pay a fine." 399 U.S. at 509. In *Tate v. Short*, 401 U.S. 395 (1971), a majority of the Court agreed with the concurring members in *Morris* and held that where the offenses were punishable only by fines an individual's imprisonment for nonpayment because of indigency was the same unconstitutional discrimination that had been discussed in *Williams*. After ruling that sentences imposing fines and cost should not be immediately converted into a prison sentence without an opportunity at liberty to pay the fine and cost, the Court noted: "We emphasize that our holding today does not suggest any constitutional infirmity in imprisonment of a defendant with the means to pay a fine who refuses or neglects to do so. Nor is our decision to be understood as precluding imprisonment as an enforcement method when alternative means are unsuccessful despite the defendant's reasonable efforts to satisfy the fines by those means. . . ." 401 U.S. at 400-01.

Even with the limitations expressed in *Tate* it is nonetheless apparent that a state is prohibited from committing its citizens for fines without a reasonable opportunity being afforded to allow them to meet the court's directive consistent with their respective financial situation. In the cases before us there was no determination of immediate ability to meet the mandates that had been imposed, nor was there a showing that a reasonable opportunity had been given to allow the appellants to comply without immediate incarceration. We believe that the Supreme Court has made it plain that a defendant may not be incarcerated merely because he cannot make full payment of a fine.[7] There-

[7] *Cf. State v. DeBonis*, 58 N.J. 182, 276 A. 2d 137 (1971); *Spurlock v. Noe*, 467 S.W. 2d 320 (Ky. 1971); *State v. Tackett*, 52 Hawaii 601, 483 P. 2d 191 (1971); *Johnson v. State*, 250 So. 2d 347 (Fla. 1971); ABA Project on Standards for Criminal Justice, Stand-

fore, we hold that the appellants must be given the opportunity to establish that they are unable to pay the fine. Upon a showing of indigency, the appellants should be allowed to make payments in reasonable installments.[8]

In the case of the appellant Root, the obligation which occasioned his confinement arose as a result of a conviction for the violation of the Act of June 24, 1939, P. L. 872, §506, *as amended*, 18 P.S. §4506. This act in pertinent part provides: "Any man charged by an unmarried woman with being the father of her bastard child, shall be the reputed father and if she persists in the charge in the time of her extremity of labor, or afterwards in open court, the same shall be given in evidence in order to convict such person of fornication. Such man, being thereof convicted, shall be sentenced, in addition to the fine aforesaid, to pay the expenses incurred at the birth of such child, and if such child is born dead or shall die during the continuance of the order for the maintenance of said child, to also pay the reasonable funeral expenses thereof, and to give security, by one or more sureties, and in such sum as the court shall direct, to the institution district where such child was born, to perform such order for the maintenance of the said child, as the court shall direct." If Root's imprisonment had resulted because of his failure immediately to pay a fine imposed under this section, clearly the considerations discussed above would be fully applicable. A somewhat different situation is presented here because the amount to be paid represented the lying-in expenses, support from the

---

ards Relating to Sentencing Alternatives and Procedures, §§2.7(b), 6.5(b).

[8] *See, e.g.*, Act of May 17, 1917, P. L. 199, 19 P.S. §953 *et seq*.

time of birth to the date of the order,[9] and the costs of prosecution.

Admitting that the origin of the obligation is not a fine, we nevertheless believe the same considerations which motivated the Supreme Court in *Tate,* would necessarily require the same result in this instance. There is no basis in logic or law to permit a person who is fined for his wrongdoing to escape immediate imprisonment because of indigency and yet ignore the financial status of one who has incurred legal obligations through illicit conduct. The absurdity of such a distinction is graphically demonstrated when we consider that the imposition of a fine serves *only* the end of punishment, whereas an order to pay expenses incurred, although having punitive overtones, is primarily imposed to reimburse those costs that resulted from the individual's acts. There is obviously more reason in the latter instance to afford a reasonable opportunity for payment than the former. To impose this obligation without consideration of defendant's financial ability to pay, completely frustrates the purpose which this section of The Penal Code is designed to achieve.

Therefore, those portions of the judgment which require incarceration for failure to immediately comply with the request for fine and cost are vacated and the cases remanded for further proceedings consistent with this opinion.

---

[9] It has long been settled that an order pursuant to the Act of June 24, 1939, P. L. 872, §506, *as amended,* 18 P.S. §4506, compelling an individual to contribute to the support of his illegitimate child, can be made retroactive. This Court as early as 1800 held that the court could direct payment for lying-in expenses and support of a bastard child from its birth. *Sheffer v. Rempublicam,* 3 Yeates 38 (1800). *See Commonwealth ex rel. Marshall v. Ebbert,* 212 Pa. Superior Ct. 553, 243 A. 2d 143 (1968) ; *Commonwealth v. Shavinsky,* 180 Pa. Superior Ct. 522, 119 A. 2d 819 (1956).

CONCURRING OPINION BY MR. JUSTICE EAGEN:

Initially, I voice my objection to this Court assuming jurisdiction of this appeal. Jurisdiction is clearly in the Superior Court (see Appellate Jurisdiction Act of 1970, Act of July 31, 1970, P. L. 673, Art. III, §302, 17 P.S. §211.302, Supp. 1972-73), and I am not persuaded the appeal presents an issue of such *immediate public importance* as to warrant us permitting the bypassing of the court wherein initial appellate jurisdiction lies.

As far as the merits of the appeal are concerned, I join in the order remanding the cases to the trial court for more studied consideration. However, I think it should be clearly understood that our action today does not preclude the trial court from imprisoning the appellants as an enforcement method if, after reasonable opportunity, the appellants refuse, neglect or are unable to comply with the orders of the court.

Mr. Chief Justice JONES, Mr. Justice O'BRIEN and Mr. Justice POMEROY join in this concurring opinion.