491 A.2d 125

**In the Interest of STEVEN J.**

**Appeal of STEVEN J.**

Superior Court of Pennsylvania.

Submitted March 26, 1984.

Filed March 29, 1985.

18

John H. Corbett, Jr., Public Defender, Pittsburgh, for appellant.

Before SPAETH, President Judge, and BROSKY and MONTGOMERY, JJ.

SPAETH, President Judge:

This is an appeal from an adjudication of delinquency and disposition order. Appellant argues that the evidence was insufficient to support the adjudication of delinquency; that the disposition order was erroneous in that it conditioned his release upon payment of restitution and the satisfaction of outstanding judgment orders; and that hearing counsel was ineffective. After an independent review of the record, we have concluded that the opinion of the trial court ably disposes of appellant's sufficiency claim, and we therefore affirm the adjudication of delinquency. However, since we cannot tell from the record whether the terms of the disposition order impermissibly condition the continued incarceration of a possible indigent person upon payment of restitution, we remand for further proceedings consistent with this opinion. As to appellant's ineffectiveness claim, we note that counsel on appeal is from the same public defender's office as hearing counsel. The usual remedy in such a situation is to remand for the appointment of new counsel. *See Commonwealth v. Fox*, 476 Pa. 475, 383 A.2d 199 (1978); *Commonwealth v. Serianni*, 337 Pa.Super. 309, 486 A.2d 1349 (1984) (*en banc*). In the interest of judicial economy, we now order that should appellant appeal from the order entered on remand and raise the same ineffectiveness claim, the trial court shall appoint new counsel to argue that claim.

On November 24, 1982, appellant was charged by petition of delinquency with aggravated assault, reckless endangerment and criminal conspiracy. The incident out of which these charges arose occurred on October 29, 1982. The victim testified that as he walked down a street, he saw appellant, appellant's brother, and two others watching him from a nearby hillside. N.T. at 45, 47–48. Appellant was carrying a rifle. N.T. at 32. Upon seeing the group, the victim ducked into the vestibule of a nearby bar. When he peered out of the door to see if the group was still there, he saw appellant aim the rifle at him, and he was almost immediately struck in the eye with a pellet. N.T. at 30, 34. The victim was hospitalized for six days, and at the time of the hearing the pellet remained in his eye. N.T. at 34–35. The victim also testified that there was previous animosity between himself and appellant. N.T. at 33–34.

On December 2, 1982, two days before appellant's eighteenth birthday, a hearing was held on the petition to have appellant adjudicated a delinquent child. After hearing the testimony of the victim, and that of several witnesses presented by appellant, the trial court adjudicated appellant a delinquent child. The court then proceeded to the dispositional phase of the hearing. It noted: that appellant had two previous adjudications of delinquency, one of them for aggravated assault, N.T. at 96–99; that according to the victim's testimony, appellant had continued, after the victim's release from the hospital, to threaten the victim, and had made gestures mimicking the firing of a rifle, and had laughed, N.T. at 36–37, 113; that appellant had been placed on probation for each of his previous offenses, and had committed each subsequent offense while on probation, N.T. at 98–99; and finally, that a judgment order imposed against appellant's parents as a consequence of appellant's previous offense had remained, for the most part, unpaid, N.T. at 98. These factors led the court to conclude that "a commitment is absolutely essential and necessary." N.T. at 110. The court also determined that payment of restitution was necessary to teach appellant "that we have laws which

apply to him and his brother just the same as they do anybody else; ..." N.T. at 110. The court then outlined and attempted to clarify the disposition it wished to impose:

THE COURT: He's committed to the Youth Development Center at New Castle, Intensive Treatment Unit, for a minimum of eighteen months. No release to the community is going to be considered until all restitution has been paid and all judgments have been paid. In short, he is not going to be released back into the community to cause more crimes or delinquency and cause more damage to the community until, through his earnings, while he is in placement, he has earned enough to pay the five hundred-some dollars or what it is that he owes to the prior damages that he caused to the City of Clairton, and the damages caused to Montese Perkins [the victim].

MR. BECHTOLD [probation officer]: Your Honor, I haven't had any success in residents of the I.T.U. specifically gaining employment—

THE COURT: I think he will gain some employment, not while he is in the I.T.U., but when they come to me to release him to the Line Cottage or to Forestry Camp.

MR. BECHTOLD: We can go to Forestry Camp upon release from the I.T.U.?

THE COURT: Oh, yes, and then he will get a job and his earnings will be confiscated and paid over to his victims, and if he absconds or attempts to abscond, he will go back into the I.T.U. I don't mean to temporize with him at all.

MR. BECHTOLD: That would be 18 months minimum specifically in the I.T.U.?

THE COURT: No, not in the I.T.U. I'm saying before he gets back into the community, it is going to be a year and a half if he behaves himself and if his brother isn't out in the street with more thuggery, threatening and intimidating and causing difficulty. If his brother is and it comes to my attention, I am not going to release him into that situation to get into more trouble.

MR. RAYL [appellant's attorney]: To clarify the situation, 18 months at New Castle with authority to place at Line Cottage or Forestry Camp?

THE COURT: They will have to come back to court every six months or nine months for a review, and when they come in, I will find out how he is doing. If he has done all right in the I.T.U. after six months and it makes sense, I may release him from the I.T.U. to the Line Cottage. That's going to depend on him and how much sense he displays. He hasn't displayed a bit of sense while he's been on my probation, not a bit.

N.T. at 110–12.

The disposition ordered by the court, as it appears in the record, is as follows: "Above named child committed to Y.D.C.–New Castle, Pa.–I.T.U. for a minimum of 18 months. To be reviewed June 6, 1983. It is further ordered that said child is not to be released into the community until all restitutions and judgments are paid in full." Record at 3. The court also ordered appellant to pay restitution to the victim of $132,[1] and entered a judgment order against appellant's mother in favor of the victim in the amount of $300. Record at 4.

In considering appellant's argument that the disposition order was erroneous in that it conditioned his release upon payment of restitution and the satisfaction of outstanding judgment orders, it is important to distinguish among the order's four parts.

■ The first part of the disposition order orders appellant's commitment to a youth detention center for eighteen months, reviewable in six months. This order was within the statutory limits, and was a proper exercise of the court's discretion under the Juvenile Act. See 42 Pa.C.S. § 6352(a)(3), 6353(a).

1. The amount of restitution was raised by $312 on January 24, 1983. Record at 7. The reasons for this do not appear in the record. We note, however, that on the date of the hearing the pellet had not yet been removed from the victim's eye.

■ The second part of the disposition order imposed a judgment order against appellant's mother, in favor of the victim, of $300. This order, also, was proper. *See* 11 Pa.C.S. §§ 2002–2004. However, in its opinion in response to this appeal, the trial court conceded that it was without power to condition appellant's release upon the payment of the judgment order against his mother. As the court recognized, the statutory remedy for non-payment of such an order is limited to an action in assumpsit. Opinion at 9, *citing* 11 Pa.C.S. § 2003(a), *In re Carroll*, 260 Pa.Super. 23, 393 A.2d 993 (1978). We agree and therefore will reverse the disposition order insofar as it conditions appellant's release upon his mother's payment of her outstanding judgment order.

■ The third part of the disposition order required appellant to make restitution of $132, subsequently raised to $444. *See supra* n. 2. We have, in the past, held such orders to be without statutory authority. *See In re Evans*, 246 Pa.Super. 430, 371 A.2d 914 (1977); *In re Gardini*, 243 Pa.Super. 338, 365 A.2d 1252 (1976). The legislature subsequently amended the Juvenile Act, however, to give a court the authority to impose "fines, costs or restitution as deemed appropriate as part of the plan of rehabilitation considering the nature of the acts committed and the earning capacity of the child." 42 Pa.C.S. § 6352(a)(5). *See In re Ryan*, 277 Pa.Super. 433, 439 n.3, 419 A.2d 1224, 1227 n.3 (1980), *appeal dismissed*, 499 Pa. 220, 452 A.2d 1018 (1982) ("[o]ne may surmise that § 6352(a)(5) and § 6352(a)(6) were enacted in response to *Evans* and *Gardini.*") Before a court may impose such a restitution order, however, it must make some inquiry into "earning capacity." *See In re Ryan, supra*, 277 Pa.Superior Ct. at 439, 419 A.2d at 1227 ("[i]f appellants mean that before requiring a child to pay a fine, the court must determine the child's ability to pay, we agree with appellants.")

In the present case, it is not clear from the record whether the court did make such an inquiry, or whether it had facts available to it, not of record, to cause it to suspect

that appellant was not in fact without resources. The court noted that appellant had sufficient funds to attend football games, which were not being applied against the outstanding judgment order, and indicated skepticism that appellant's mother had in fact been unable to pay for the past two years. N.T. at 100, 105. Yet the court seemed to accept appellant as in fact indigent, for it noted that when appellant's disposition came before it for review in six months, it would consider altering the placement to enable appellant to earn sufficient money to satisfy the restitution order against him. N.T. at 110–111.

We are also unable to determine the precise terms of the disposition order. We therefore cannot determine whether it impermissibly conditions appellant's release upon the payment of his outstanding obligation.

■ We have not previously construed the limits of a juvenile court's power to condition confinement upon the payment of restitution. However, the principles regarding the payment of fines by adult offenders are established. Our Supreme Court has held that "a state is prohibited from committing its citizens for fines without a reasonable opportunity being afforded to allow them to meet the court's directive consistent with their respective financial situation." *Commonwealth ex rel. Benedict v. Cliff,* 451 Pa. 427, 431, 304 A.2d 158, 161 (1973).[2] While "[there is] no doubt that imprisonment of a non-indigent person who willfully fails to pay fines or costs is permissible," *Com-*

2. The Supreme Court, in *Benedict,* relied on *Williams v. Illinois,* 399 U.S. 235, 90 S.Ct. 2018, 26 L.Ed.2d 586 (1970) and *Tate v. Short,* 401 U.S. 395, 91 S.Ct. 668, 28 L.Ed.2d 130 (1971), for the proposition that a state may not incarcerate an indigent defendant solely for inability to pay a fine. The United States Supreme Court has recently qualified *Williams* in *Bearden v. Georgia,* 461 U.S. 660, 103 S.Ct. 2064, 76 L.Ed.2d 221 (1983). In *Bearden,* the Court noted that a state could not revoke probation for non-payment of a fine unless it determined that a probationer willfully refused to pay despite possessing resources to do so; failed to make bona fide efforts to pay; or the state lacked alternative means to further its interests in punishment or deterrence. *Bearden,* however, did not disturb the requirement at issue here, that an inquiry into ability to pay is a prerequisite to incarceration for non-payment. *See infra.*

*monwealth of Pennsylvania, County of Lancaster v. Rosser,* 268 Pa.Super. 116, 122 n.8, 407 A.2d 857, 860 n.8 (1979), before being subject to imprisonment for not paying a fine, the defendant must be given an opportunity to establish his indigency. *See Commonwealth v. Schwartz,* 275 Pa.Super. 112, 418 A.2d 637, 639 (1980); *Commonwealth v. Holm,* 233 Pa.Super. 281, 287, 335 A.2d 713, 716–17 (1975). *See also* Pa.R.Crim.P. 1407 ("[a] court shall not commit a defendant to prison for failure to pay a fine or costs unless it appears after hearing that the defendant is financially able to pay the fine or costs.") We believe these principles are equally applicable to restitution orders imposed on juveniles.

■ Applying these principles here, we find ourselves unable to determine whether the disposition order transgresses them. On its face, the order does in fact appear to condition appellant's release upon the payment of an outstanding restitution order. *See supra.* If, without any inquiry into his ability to pay having been made, appellant must remain confined beyond the period of confinement imposed for his offenses, simply because he does not pay the restitution order, then the disposition order clearly conflicts with the principles we have noted. However, the trial court may well have intended a very different disposition. From a reading of the hearing transcript and the court's subsequent opinion, one might surmise that the court intended: that appellant be kept in the detention center, where he would have no opportunity to earn money, for six months, and that this period would sufficiently satisfy the confinement aspect of the disposition that the court had concluded was necessary; that following this period, and assuming appellant's good behavior, appellant would be placed in a supervised environment, such as a Line Cottage or a Forestry Camp, where he would be able to work off his restitution obligation to the victim; and that following this period, provided it did not exceed three years,[3] appellant would be released. Such a disposition does not condition appellant's release upon the payment of

---

**3.** 42 Pa.C.S. § 6353(a) provides that "[n]o child shall initially be committed to an institution for a period longer than three years or a

the restitution order. Rather, it imposes upon appellant an obligation to pay restitution, as an essential element of the disposition, and offers him the means to do so; it would clearly be designed to effectuate the purposes of the Juvenile Act "to remove from children committing delinquent acts the consequences of criminal behavior, and to substitute therefore a program of supervision, care and rehabilitation." 42 Pa.C.S. § 6301(b)(2). If this is the disposition the trial court intended, however, its terms must appear on the face of the order.

The adjudication of delinquency is affirmed. The order of disposition is reversed to the extent that it conditions appellant's release upon satisfaction of the judgment order against his mother, and the case is remanded for supplementation of the record and clarification of the order, consistent with this opinion. Should appellant appeal from the order entered on remand and again raise a claim of ineffectiveness, the trial court shall appoint new counsel to argue that claim. Jurisdiction is relinquished.

period longer than he could have been sentenced by the court if he had been convicted of the same offense as an adult, whichever is less." Aggravated assault may be classed as a felony of either the first or the second degree, under the circumstances in the present case. *See* 18 Pa.C.S. §§ 2702(a)(1), 2702(a)(4), 2702(b). As such, it would carry a maximum penalty of either twenty or ten years, respectively. *See* 18 Pa.C.S. §§ 1103(1), 1103(2).