Larry R. MILLER, Petitioner,

v.

PENNSYLVANIA BOARD
OF PROBATION AND
PAROLE, Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Aug. 3, 2001.

Decided Sept. 28, 2001.

Ellen K. Barry, Carlisle, for petitioner.

Robert A. Greevy, Harrisburg, for respondent.

Before PELLEGRINI, Judge, FRIEDMAN, Judge, and FLAHERTY, Senior Judge.

FLAHERTY, Senior Judge.

Larry R. Miller (Petitioner) petitions for a review of the Pennsylvania Board of Probation and Parole (Board) denial of his administrative appeal objecting to the decision to revoke Petitioner's parole for a technical violation. We vacate and remand.

Petitioner was paroled with a special condition that he successfully complete a sex offender program (Program). During the intake process of the Program on August 16, 2000, Petitioner was advised that he would need to undergo a polygraph exam regarding the consistency/veracity of some of his statements. The cost of the exam was $250 and this cost must be paid in full before the exam. On October 16, 2000, Petitioner was asked to sign a contract to pay for the exam but he refused because he did not have the money. Consequently, Petitioner was "unsuccessfully discharged" from, *i.e.*, did not successfully complete, the Program. The Board concluded that he committed a technical violation of his parole and recommitted him for twelve months.

On appeal, Petitioner raises two arguments. First, he contends that his inability to pay $250 for the polygraph is of no fault of his own but rather he simply could not afford it. To the contrary, the Board asserts that Petitioner did not make a good faith effort to remain in the Program because he made no effort to arrange to make payments for the test. Second, Peti-

tioner argues that his due process rights were violated when his parole was revoked because of his inability to pay and the Board's failure to inquire whether his inability to pay was willful. The Board states, however, that it was not Petitioner's failure to pay *per se*, which resulted in his discharge. Instead, it was Petitioner's failure to make any effort or arrangements to build up a fund toward payment of the test during the two months that he was in the Program.[1]

We begin our analysis by properly framing the issue before us.[2] A staff member. of the Program testified at the revocation hearing that if Petitioner had paid for and taken the polygraph, then he would not have been unsuccessfully discharged from the Program. C.R. 35. Regardless of whether payment is made by lump sum or installments, payment must be in full before the examination is given. C.R. 41. Based on this testimony, it becomes clear that Petitioner's parole violation is not about his commitment to treatment but about his ability to pay for required treatment.[3] The issue is whether his inability to pay can be grounds for his parole revocation as a technical violator.

In *Hudak v. Pennsylvania Board of Probation and Parole*, 757 A.2d 439, 442 (Pa.Cmwlth.2000), we held that "where the Board has fashioned a condition of parole over which the petitioner does not have control, the Board must show that the petitioner was somewhat at fault in order to prove a violation." For example, a parolee was without fault when he was unsuccessfully discharged from a program for purely medical reasons. *Id.* at 440–41. In formulating this opinion, this Court stated:

> We also find instructive in this case *Bearden v. Georgia*, 461 U.S. 660, 103 S.Ct. 2064, 76 L.Ed.2d 221 (1983). The question raised in *Bearden* was whether it was unconstitutional to revoke an indigent defendant's probation for failure to pay a fine and restitution. The United State Supreme Court concluded that automatically revoking probation because a petitioner could not pay a fine, without determining that the petitioner had not made sufficient bona fide efforts to pay or that adequate alternative forms of punishment did not exist was in error. An examination of fault must be made before probation is revoked. We recog-

1. We conclude, as a preliminary matter, that the record is inconclusive about whether arrangements were made. In closing remarks, William Forran, Parole Agent, stated that Petitioner's refusal to sign the contract and take the polygraph was a "flagrant violation" of the recommendation of treatment. The record indicates that Ellen Barry, Petitioner's Counsel, then stated, "But I signed the contract." C.R. at 44. First, we are uncertain whether Ms. Barry uttered these words or, more plausibly, it was Petitioner who spoke. Second, there is no finding that the contract was or was not signed. Third, if the fact that the signed or unsigned contract is to be used to prove that bona fide efforts were taken to acquire or save money for the polygraph, then the contract in question should have been made part of the record.

2. Our review of the merits of this case is limited under Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704, to determining whether necessary findings are supported by substantial evidence, an error of law was committed, or a constitutional right of the parolee was violated. *Pometti v. Pennsylvania Board of Probation and Parole*, 705 A.2d 953 (Pa.Cmwlth.1998).

3. We are not convinced that the issue is about Petitioner's commitment to treatment because he would still not be able to complete his treatment (*i.e.*, take a polygraph) if he did not have the money. Petitioner could have signed a thousand contracts agreeing to pay for the test but if he did not actually *pay* then he would not receive a polygraph and, therefore, he could never successfully complete the Program.

nize that there is a difference between probation for wrongdoing and parole after serving a portion of a prison sentence, but the requirement of a showing of fault on the part of the petitioner in a violation of either probation or parole is similar.

*Hudak*, 757 A.2d at 441 (footnote omitted). In *Bearden*, the United States Supreme Court held that in revocation proceedings, the tribunal must inquire into reasons for the failure to pay.

> If the probationer willfully refused to pay or failed to make sufficient bona fide efforts legally to acquire the resources to pay, the court may revoke probation and sentence the defendant to imprisonment within the authorized range of its sentencing authority. If the probationer could not pay despite sufficient bona fide efforts to acquire the resources to do so, the court must consider alternate measures of punishment other than imprisonment. Only if alternate measures are not adequate to meet the State's interests in punishment and deterrence may the court imprison a probationer who has made sufficient bona fide efforts to pay. *To do otherwise would deprive the probationer of his conditional freedom simply because, through no fault of his own, he cannot pay the fine. Such a deprivation would be contrary to the fundamental fairness required by the Fourteenth Amendment.*

*Bearden*, 461 U.S. at 672, 103 S.Ct. 2064 (footnote omitted) (emphasis added). The Pennsylvania Superior Court has interpreted this holding as requiring the revocation court to inquire into the reasons for a party's failure to pay and to make findings pertaining to the willfulness of the party's omission. *Commonwealth v. Eggers*, 742 A.2d 174, 175–76 (Pa.Super.1999)

(requiring the court to inquire into a person's ability to pay restitution prior to revocation of probation based on failure to pay same).

In *Lawson v. Pennsylvania Board of Probation and Parole*, 105 Pa.Cmwlth. 427, 524 A.2d 1053 (1987), a parolee appealed his violation of a special condition of his parole which required him to pay fines, costs and restitution imposed by the trial court as part of his sentence. We stated that in order to revoke parole for failing to pay fines, costs and restitution, the Board must take into consideration and make a reasonable allowance for parolee's individual situation. *Id.* 432, 524 A.2d 1053. This Court considered the parolee's alternative defense of indigency and concluded that such a defense is viable but the burden of proof is upon the parolee. *Id.* at 433, 524 A.2d 1053 *quoting Commonwealth ex rel. Benedict v. Cliff*, 451 Pa. 427, 434, 304 A.2d 158, 161 (1973) ("[W]e hold that the appellants must be given the opportunity to establish that they are unable to pay the fine. Upon a showing of indigency, the appellants should be allowed to make payments in reasonable installments.").

■ We find the procedure identified by these cases to be necessary to preserve the fundamental fairness required by the Fourteenth Amendment in parole revocations. By applying this procedure, we hold that where a technical violation of parole arises because of a failure to pay for treatment, then the burden is on the parolee to demonstrate his inability to pay. Upon proof of this inability, the burden then shifts to the Board to prove that the parolee was somewhat at fault by failing to take sufficient bona fide efforts to acquire or save the necessary resources to pay for treatment.[4]

---

4. This holding is consistent with *Hudak*. The

requirement that a parolee prove his inability

In the matter before us, Petitioner testified that he earned $6.25 an hour when he started treatment at the Program. There was no testimony regarding the number of hours worked. Apparently, Petitioner began earning $7.30 an hour three days before his unsuccessful discharge. The Program charged Petitioner $25 for an intake evaluation and $10 for each weekly session. However, Petitioner testified that the weekly session fee was increased to $15. Moreover, Petitioner testified that his living expenses at "the center" were 15 percent for rent and 10 percent for fine, costs and food. C.R. 38. This left Petitioner allegedly with $73. There is no indication if this is a weekly, bi-weekly or monthly net income. Petitioner also testified that he "told the man four times in class on October 16 [the day of discharge] that I couldn't afford it [the polygraph], could he give me a two-week extension." C.R. 39. We conclude that the record is *inconclusive* about whether Petitioner was unable to pay the cost of the polygraph exam.

The Program staff member testified that he encourages people to make payments and that he "give[s] somebody two months, two months plus sometimes to do that." C.R. 41. He also testified that the typical payment plan for someone making $6.00—$7.00 an hour would be an extra $10, $15 or $25 a week.[5] *Id.* The staff member did not have knowledge about whether Petitioner made any payments toward the cost of the polygraph exam.[6] *Id.* We conclude

that the record is *inconclusive* about whether Petitioner was somewhat at fault by failing to take sufficient bona fide efforts to acquire or save the necessary resources to pay for treatment.

In accordance with this Opinion, we must remand this case for a determination as to whether Petitioner met his burden of proving that he is unable to pay for the polygraph. If Petitioner has satisfied his burden, then it must be determined whether the Board has demonstrated that Petitioner was somewhat at fault. The order of the Board recommitting Petitioner as a *technical parole violator is vacated and this matter is remanded for further proceedings.*

### ORDER

AND NOW, this 28th day of September, 2001, the order of the Pennsylvania Board of Probation and Parole dated December 15, 2000 which recommitted Larry R. Miller as a technical parole violator is vacated. This matter is remanded for further proceedings in accordance with this opinion.

Jurisdiction is relinquished.

---

to pay for a treatment expense represents the parolee's lack of control over a condition of parole. The Board requirement that it prove that a parolee failed to take sufficient bona fide efforts is the fault element necessary to prove a violation.

5. We take judicial notice that the period between August 16th and October 16th is 9 weeks. Under the $10 per week plan, it would take 25 weeks to pay for the exam.

The $15 plan would take 16.7 weeks and the $25 plan would take 10 weeks.

6. When questioned about the $15 Petitioner paid each week, the staff member testified that he believed that Petitioner's contract for weekly therapy sessions set the cost at $10 per week. He did not know that he was receiving an extra $5 per week from Petitioner.