**[J-6-2022] [MO: Dougherty, J.]**

**IN THE SUPREME COURT OF PENNSYLVANIA**
**EASTERN DISTRICT**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 27 EAP 2021 |
| | : | |
| Appellee | : | Appeal from the Judgment of |
| | : | Superior Court entered on March |
| | : | 23, 2021 at No. 1313 EDA 2018 |
| v. | : | Affirming the Judgment of Sentence |
| | : | entered on April 27, 2018 in the |
| | : | Court of Common Pleas, |
| ALEXIS LOPEZ, | : | Philadelphia County, Criminal |
| | : | Division at No. CP-51-CR-0004377- |
| Appellant | : | 2015. |
| | : | |
| | : | ARGUED: March 9, 2022 |

**DISSENTING OPINION**

**JUSTICE DONOHUE**                                    **DECIDED: August 16, 2022**

The Majority concludes that Criminal Rule of Procedure 706(C) does not require a trial judge to consider a defendant's ability to pay court costs at sentencing. The lynchpin of its analysis is its conclusion that Section (C) "like the rest of the rule, pertains to post-sentencing proceedings and appears in chronological order. That is, Rule 706(C) concerns the court's post-sentence determination of the amount and method of payment after the defendant has defaulted[.]" Maj. Op. at 13-14. I respectfully dissent because I disagree that Rule 706(C) exclusively applies to post-sentencing proceedings. When reading the provision in context of all of Part A ("Sentencing Procedures") of Chapter 7 of the Rules and in pari materia with the relevant legislation, I conclude that the Rule's operation is ambiguous. Turning to other indicia of legislative intent to resolve the

ambiguity, I conclude that the General Assembly and this Court intended to have the trial judge determine at sentencing whether a defendant will ever be able to pay court costs.

I.

As background for the analysis, a brief description of the various sources of law that govern sentencing is helpful. The basic process is simple: a judge imposes a penalty linked to each conviction. A "conviction is the essential supporting infrastructure for a sentence," *Commonwealth v. Spruill*, 80 A.3d 453, 464 (Pa. 2013) (Saylor, J., concurring), and "[t]he power to impose sentences is strictly within the province of the court." *Commonwealth v. Burton*, 301 A.2d 675, 676 (Pa. 1973). But the court's sentencing power is circumscribed by the range of punishments made available by the General Assembly for each conviction. "When a trial court imposes a sentence outside of the legal parameters prescribed by the applicable statute, the sentence is illegal and should be remanded for correction." *Commonwealth v. Vasquez,* 744 A.2d 1280, 1284 (Pa. 2000).

This Court, pursuant to its rulemaking authority, has prescribed further requirements. For example, this Court provides a trial court with the discretion to order a pre-sentence investigation report in any case. If the court elects not to order a report, the court must explain why for three categories of cases. *See* Pa.R.Crim.P. 702(A)(2).[1] This type of requirement is fairly described as reflecting the Court's policy decisions. *See Commonwealth v. Schwartz*, 418 A.2d 637, 641 n.4 (Pa. Super. 1980) (Price, J., dissenting) ("This policy of pre-sentence report disclosure has been accepted in numerous jurisdictions by either judicial decree or legislative mandate."). Others

---

[1] The General Assembly may also order additional pre-sentence investigation, as in the case of sexually violent predator hearings. *See* 42 Pa.C.S. §§ 9799.24(a); 9799.58(a).

incorporate common law guarantees, such as the multiple references in the Rules requiring a judge to give defendants an opportunity to speak. The "guarantee of an opportunity to address the court before sentencing has its origins in the long-established common law right of allocution." *Commonwealth v. Knighton*, 415 A.2d 9, 11 (Pa. 1980). Constitutional guarantees obviously restrain courts as well. As the Majority aptly recounts, this Court's holding in *Commonwealth ex rel. Benedict v. Cliff*, 304 A.2d 158 (Pa. 1973), which involved a constitutional holding, drove the adoption of what is today Rule 706.

## II.

Our Rules of Criminal Procedure are separated into eleven chapters. The seventh chapter, entitled "Post-Trial Procedures in Court Cases," addresses, inter alia, sentencing. The chapter is split into three parts, with Part A dealing with "sentencing procedures," Part B addressing "post-sentence procedures," and Part C covering expungement. Rule 706 is placed under Part A. Whereas the Majority focuses on the "chronological order" of Rule 706, I submit that the focus should be on sentencing at large and how costs fit within the amalgamation of common law, Rules of Criminal Procedure, and legislation that applies at sentencing.

First, as set forth above, a court's sentencing options must be carried out in tandem with legislative requirements. Section 9721 of the Sentencing Code is the general sentencing statute and provides the five generic options available to a court: probation, guilt without further penalty, partial confinement, total confinement, or a fine. 42 Pa.C.S. § 9721(a). A court is also required to order restitution, 42 Pa.C.S. § 9721(c), and in 2010

the General Assembly inserted language making clear that a court is required to order the payment of court costs.

> Notwithstanding the provisions of section 9728 (relating to collection of restitution, reparation, fees, costs, fines and penalties) or any provision of law to the contrary, in addition to the alternatives set forth in subsection (a), the court shall order the defendant to pay costs. In the event the court fails to issue an order for costs pursuant to section 9728, costs shall be imposed upon the defendant under this section. No court order shall be necessary for the defendant to incur liability for costs under this section. The provisions of this subsection do not alter the court's discretion under Pa.R.Crim.P. No. 706(C) (relating to fines or costs).

42 Pa.C.S. § 9721(c.1).

Turning to how the Rules effectuate these enactments and reflect our policies, Rule 704 is the starting point. It sets the timeframe for sentencing, which shall ordinarily take place within ninety days of conviction. Pa.R.Crim.P. 704. Section (B) permits a judge to decide certain motions "before imposing sentence." Section (C) governs the actual "Sentencing Proceeding" itself and requires the judge to give the parties an opportunity to present statements and argument. It also instructs the judge to "state on the record the reasons for the sentence imposed" and provide the defendant with his or her post-sentence rights. Pa.R.Crim.P. 704(A-C).

Rule 705 is titled "Imposition of Sentence." Notwithstanding that title, the Rule's text only speaks to sentences of confinement. The judge must "state the date the sentence is to commence," and must specify whether multiple sentences are to run concurrently or consecutively. Pa.R.Crim.P. 704(A-B). Rule 705.1 covers restitution[2] and

---

[2] Additionally, restitution can be imposed either as a direct sentence or as a condition of probation or parole. 18 Pa.C.S. § 1106; 42 Pa.C.S. § 9754.

says that "[a]t the time of sentencing, the judge shall determine what restitution, if any, shall be imposed." Pa.R.Crim.P. 705.1(a).

Rule 706, the focus of the instant dispute, is the only Rule within Chapter Seven that mentions costs in its text. For ease of reference its text is reproduced below.

**Fines or Costs**

(A) A court shall not commit the defendant to prison for failure to pay a fine or costs unless it appears after hearing that the defendant is financially able to pay the fine or costs.

(B) When the court determines, after hearing, that the defendant is without the financial means to pay the fine or costs immediately or in a single remittance, the court may provide for payment of the fines or costs in such installments and over such period of time as it deems to be just and practicable, taking into account the financial resources of the defendant and the nature of the burden its payments will impose, as set forth in paragraph (D) below.

(C) The court, in determining the amount and method of payment of a fine or costs shall, insofar as is just and practicable, consider the burden upon the defendant by reason of the defendant's financial means, including the defendant's ability to make restitution or reparations.

(D) In cases in which the court has ordered payment of a fine or costs in installments, the defendant may request a rehearing on the payment schedule when the defendant is in default of a payment or when the defendant advises the court that such default is imminent. At such hearing, the burden shall be on the defendant to prove that his or her financial condition has deteriorated to the extent that the defendant is without the means to meet the payment schedule. Thereupon the court may extend or accelerate the payment schedule or leave it unaltered, as the court finds to be just and practicable under the circumstances of record. When there has been default and the court finds the defendant is not indigent, the court may impose imprisonment as provided by law for nonpayment.

Pa.R.Crim.P. 706.

Because Sections (A), (B), and (D) all address events that occur only after sentence has been imposed, the Majority concludes that the same must be true of Section (C). *See* Maj. Op. at 13. The Majority offers ample support for its reading, including the oddity of placing "a single provision uniquely concerning the sentencing itself" after provisions addressing post-sentencing matters, *id.* at 14, and the absence of language expressly tying costs to sentencing. *Compare* Pa.R.Crim.P. 705.1(A) ("At the time of sentencing, the judge shall determine what restitution, if any, shall be imposed."). The Majority's analysis is a plausible interpretation. However, Lopez and the Commonwealth offer a reasonable interpretation as well. While I disagree that their interpretation is entirely correct, I credit several aspects of their argument as supporting an ambiguity.

I agree that the sequencing within Rule 706 is somewhat odd, but the overall structure of the Rules is out of order, too: Rule 704(C)(3) references the judge's duty to explain "the sentence imposed," but that Rule precedes Rules 705 and 705.1. If our focus is strictly on sequential logic, Rule 704(C)(3) should appear after these Rules. Moreover, if the Majority is correct that Rule 706 only applies after sentencing, its placement within Part A is illogical. Part B, addressing "post-sentencing procedures," is obviously a more logical home if so.[3] Relatedly, the Majority observes that "[t]he rule's three other sections

---

[3] The Majority is correct that Rule 708, addressing revocation proceedings, is something that occurs only post-sentencing. However, those proceedings can result in revocation and resentencing. *See* Pa.R.Crim.P. 708(D) ("Sentencing Procedures"); *Commonwealth v. Holmes*, 933 A.2d 57, 59 n.5 (Pa. 2007) (explaining that following a violation of probation a court "may impose a new sentence"). As for Rule 707, the Comments reference statutory authority requiring the trial court "within 10 days of sentencing to provide specified information to the county correctional facility." Comment, Rule 707 (citing 42 Pa.C.S. § 9764(b)). As that duty can plausibly be described as something that occurs in tandem with sentencing or after sentencing, either part is a logical place.

clearly refer to post-sentencing proceedings after the court has already ordered costs at sentencing," Maj. Op. at 13. This is correct in the abstract but skips over the important question of how and when the referenced costs were imposed in the first place. Lopez and the Commonwealth are correct that Rule 706(C) is the only Rule-based provision that could apply.[4]

Indeed, the fact that Rule 706(C) speaks to both fines and costs suggests that the determination of costs must be made at the time of sentencing. This is because fines are part of the sentence itself. *See* 42 Pa.C.S. § 9726(b) (establishing when a court "may sentence the defendant to a pay a fine in addition to another sentence"); *Commonwealth v. Eisenberg*, 98 A.3d 1268, 1279 (Pa. 2014) ("[W]e note that the Commonwealth does not dispute that the fine imposed here is a penalty, and therefore an Article I, Section 13 claim is cognizable."). As the Majority explains, costs are described as incidental to the judgment. *See* Maj. Op. at 19. This makes them akin to collateral consequences, which are non-punitive in nature. Accepting that fines are punitive and costs are not, consider the consequences of the Majority's determination that Rule 706(C) applies only after the criminal sentence has been imposed. The plain text of Rule 706(C) permits the judge to "determin[e] the amount … of a fine," and therefore the Rule purports to allow a judge to modify, or even impose in the first instance, a fine. Putting aside jurisdictional questions, it is unclear how a court could adjust the fine at that juncture without modifying the

---

[4] I do not "assum[e] that there must be a rule governing the imposition of costs at sentencing," and there is no doubt that "there are occasions where our rules of procedure do not address particular issues," Maj. Op. at 27. I merely submit that given the existence of a Rule titled "Fines and Costs," which is organized under the part of the Rules addressing sentencing, that it is plausible to conclude that this Rule was intended to address fines and costs at sentencing.

sentence; if so, the defendant has been resentenced and a whole new round of appeals is available.[5]

In sum, a narrow focus on the four separate paragraphs of Rule 706 ignores how costs and fines fit within sentencing as a whole under Chapter Seven of the Rules of Criminal Procedure. The Majority is correct that Rule 706(C) "does not exist in isolation," but neither does Rule 706 itself. It is merely one component in the bundle of common law, policy choices by this Court, and legislative commands that apply at sentencing. The absence of any other Rule governing a trial court's imposition of fines and costs, which naturally must occur at the sentencing proceeding itself, lends strong support to Lopez's interpretation. In this regard, I agree with Lopez that the use of the phrase "determining the amount and method of payment of a fine or costs" suggests that the language is operative at sentencing. The Majority assumes that an initial "determination" can take place after sentencing, but that is incompatible with the statutory sources as the

---

[5] The Majority claims that my conclusion that Rule 706(C) applies at default hearings also raises "the possibility of resentencing and a new round of appeals," Maj. Op. at 23, but that is not true because, unlike fines, costs are not considered part of the sentence. The relevance of this point is that the Majority's interpretation creates a problem whereas my interpretation avoids it. We cannot hold that Rule 706(C) exclusively applies to post-sentencing procedures while ignoring the fact that, under the Majority's view, the plain text must be read to authorize imposing a fine well after sentencing.

Furthermore, I disagree that construing Rule 706(C) to apply to fines under the Majority's interpretation would be "redundant and duplicative" merely because there is "an express statutory mandate requiring the trial judge to consider the defendant's ability to pay before imposing a fine at sentencing." *Id.* (citation omitted). Because sentencing involves a mix of judicial discretion and legislative requirements we should expect and indeed encourage this type of "redundancy." For example, by Rule "the judge shall determine what restitution, if any, shall be imposed," despite the express statutory mandate to order restitution. Pa.R.Crim.P. 705.1(A); 42 Pa.C.S. § 9721(c). Surely the Majority would not say that Rule 705.1(A) should be deleted because a statute already covers it.

determination is, as a technical matter, made by law if the trial judge does not order costs.[6]

Any later modification to that "determination" is more accurately characterized as an adjustment or a reassessment. As there are two reasonable interpretations of Rule 706(C)'s text, it is ambiguous. *A.S. v. Pennsylvania State Police*, 143 A.3d 896, 905–06 (Pa. 2016).

### III.

Resolving the ambiguity would be more difficult absent a 2010 statutory amendment. Just as the General Assembly has the authority to make a fine mandatory, it has the authority to mandate the payment of costs, too. In other words, the interpretation of Rule 706 offered by Lopez would be incompatible with legislative intent if the General Assembly decreed that all court costs are mandatory.

As I conclude that the operation of Rule 706 is ambiguous, Section 1921 of the Statutory Construction Act supplies a nonexclusive list of eight factors that may be considered in determining intent. Among these is contemporaneous legislative history. Prior to Act No. 2010-96, P.L. 469 No. 96, Section 9721 of the Sentencing Code did not discuss costs. The amendment added the following language to that statute.

> **(c.1) Mandatory payment of costs.**--Notwithstanding the provisions of section 9728 (relating to collection of restitution, reparation, fees, costs, fines and penalties) or any provision of law to the contrary, in addition to the alternatives set forth in subsection (a), the court shall order the defendant to pay costs. In the event the court fails to issue an order for costs pursuant to section 9728, costs shall be imposed upon the defendant under this section. No court order shall be necessary for the defendant to incur liability for costs under

---

[6] The Majority asserts that "'[d]etermine' in this context simply means to 'officially decide something.'" Maj. Op. at 22(citation omitted). I agree. That official decision is simply made by operation of law if the judge does not otherwise make a contrary determination at the time of sentencing. In both scenarios there is an initial determination.

> this section. The provisions of this subsection do not alter the court's discretion under Pa.R.Crim.P. No. 706(C) (relating to fines or costs).

42 Pa.C.S. § 9721. In turn, Section 9728, which deals with collections, was amended to state that a "defendant shall nevertheless be liable for costs, as provided in section 9721(c.1), unless the court determines otherwise pursuant to Pa.R.Crim.P. No. 706(C) (relating to fines or costs)." 42 Pa.C.S. § 9728(b.2).

The bill analysis provided with the legislation explained that these two amendments were prompted by *Spotz v. Commonwealth*, 972 A.2d 125 (Pa. Commw. 2009). Mark Spotz, serving a capital sentence, challenged automatic deductions from his inmate account for the payment of court costs. "The crux of Spotz's Petition avers that the Trial Court's June 17, 1996, sentencing order did not expressly order any payment of costs," and that an express order was needed to authorize the deductions. *Id.* at 129. The Commonwealth Court concluded that some court costs are waivable but others are not. *Id.* at 133. It concluded that the relevant law "authorize[d] only the deduction of court-ordered, waivable costs, which are deductible only in the presence of a court order so specifying; however, non-waivable, statutorily mandated costs are deductible absent any express court order." *Id.* at 134.

In response to *Spotz*, the statutory amendments ensured that all court costs are mandatory and automatically imposed even without a court order. The *Spotz* decision and that response highlights two points. First, that any open question regarding a trial court's authority to waive costs was settled. Second, the facts illustrate that trial courts often sentence defendants who will never be released and thus will never reappear for a Rule 706 hearing as interpreted by the Majority. A defendant who is serving a life

sentence or a death sentence is already imprisoned and thus there is no possibility that any nonpayment of court costs will result in incarceration. Thus, under the Majority's reasoning the General Assembly's attempt to address *Spotz* is ineffective as to those defendants. The more logical conclusion is that the General Assembly intended for the determination to be made at sentencing.

I further conclude that the inclusion of language allowing a trial court to waive costs indicates that the General Assembly wished to remedy the mischief caused by wasting court resources. One of the participating amici, the Office of the Controller of Allegheny County, is responsible for collecting court costs and has supplied first-hand experience. Its brief states that Allegheny County "has at least $350 million in uncollected court debt" because "indigent defendants lack the ability to pay in the first instance and their ability to pay does not improve over time." Amicus Brief of Allegheny County Controller at 3; 6. Imposing court costs that will never be paid generates other tangible costs as well.

> [W]hat is less apparent and not as well-documented are the direct burdens that fall on the County in administering the collection of court cost awards. What looks like a revenue source becomes, in practice, a revenue drain.
>
> To begin with, there are the recordkeeping burdens associated with booking the cost awards and carrying them on the books for years on end. Then, there are the burdens placed on the staff in trying to collect the awards, including in many instances, by diverting law enforcement resources. For example, when a party does not make costs or fine payments, the nonpayment will result in a hearing being scheduled. This hearing requires a warrant to be issued and served on the proper parties. Once these resources are expended, there is no guarantee the party will attend the hearing. Even if the party appears, that typically does not change the calculus. An indigent individual cannot pay the cost award. This pattern typically continues and the County receives no benefit, just an outlay of costs. And, this unproductive investment of

resources comes at the expense of other services the County could provide.

*Id.* at 7-8.

I conclude that the General Assembly intended to address this type of waste by granting a trial court the power to waive costs under Rule 706(C). Before these amendments a court's ability to waive costs was unclear. The amendments leave no doubt that a trial court is authorized to do so. The collection statute states that a defendant is liable "unless the court determines otherwise" under Rule 706(C). There is no good reason to require a court to await a defendant's inevitable default before waiving or reducing court costs, but a very good reason to avoid costs like those incurred by Allegheny County by relieving those agencies from doing pointless work. We should also recognize that bench warrants impose a real cost beyond the diversion of law enforcement resources. When a bench warrant is issued for nonpayment, a citizen will often be incarcerated until a hearing can take place.

The General Assembly's incorporation of Rule 706(C) within the statute raises the question of what the General Assembly thought Rule 706 meant. Because we make that determination today, and as there are two reasonable interpretations of the Rule's text, I acknowledge that what was intended by incorporating Rule 706(C) is itself open to interpretation. Yet, as the General Assembly explicitly referenced our Rules, we must consider our statement that the Rules "shall be construed to secure simplicity in procedure, fairness in administration, and the elimination of unjustifiable expense and delay." Pa.R.Crim.P. 101. I read the General Assembly's invocation of our Rules as an

implicit acknowledgement that our own interpretative principles apply.[7]   The statutory amendments resolved the question of whether costs may be waived, and we should adopt an interpretation that requires a trial judge to determine costs at sentencing and whether those costs should be reduced or waived.   Imposing that mandatory duty conserves judicial resources and saves citizens from needless incarceration.

Nor does this interpretation "render the statutes at war with themselves, requiring the automatic imposition of costs even in the absence of court involvement on the one hand, while simultaneously, and irreconcilably, requiring the court's presentence consideration of the ability to pay on the other."  Maj. Op. at 17-18.[8]   This criticism is unfounded, in my view, because courts sometimes fail to do that which they are required to do.   There is no need to delve into whether the failure to conduct the Rule 706(C) inquiry would implicate the discretionary aspects of sentencing or legality, but one answer

---

[7] The Majority asserts that "our task is not to weigh the competing policy interests and determine the optimal rule as a matter of policy."  Maj. Op. at 28.  As set forth within this opinion, sentencing involves both legislative commands and this Court's ability to implement the Rules of Criminal Procedure, which includes policy considerations.  To the extent the Majority cabins our analysis to what the Court originally intended in 1973, then it should refer this matter to the Criminal Procedural Rules Committee in light of the legislative response to *Spotz*.  If policy cannot play a role in determining the meaning of the current rule, it should certainly play a role in determining whether amendment is warranted.

[8] While I find that the duty is mandatory, the Majority does not address the Superior Court's conclusion that "a trial court has the discretion to hold an ability-to-pay hearing at sentencing."  *Commonwealth v. Lopez,* 248 A.3d 589, 590 (Pa. Super. 2021) (en banc). While our allowance of appeal is limited to whether the inquiry is mandatory, if the Majority is correct the question of whether a trial court **may** do so will doubtlessly arise in short order.  Eight of the nine judges on the Superior Court (Judge Nichols concurred in the result) concluded that the trial judge has discretion to consider a defendant's ability to pay at sentencing.  Thus, while I disagree with the Superior Court in that I find the duty to be mandatory, I share the view that no statutory conflict arises by permitting judges to reduce or waive costs at sentencing.

to the Majority's assertion is that a defendant is generally obligated to object or raise the issue if the trial court failed to consider the matter. If the judge neglects to conduct the inquiry and the defendant fails to object, the costs will be imposed by operation of law.[9] Moreover, Rule 706(C) requires that any reduction or waiver of costs be "just and practicable," which signals that the determination must be made within the confines of the individual case and through consideration of a defendant's unique circumstances. As with sentencing decisions regarding the proper penalties, the presiding jurist is in the best position to make an individualized decision concerning a defendant's ability to pay. I therefore respectfully dissent.

Justice Todd joins this dissenting opinion.

---

[9] I agree with the Majority that Rule 706(C) would apply at a default hearing as I conclude that Rule 706(C) does not exclusively apply to post-sentencing proceedings. The Majority appears to view this as irreconcilable with my conclusion that the initial "determination" must be made at sentencing. Maj. Op. at 22 ("Thus, the dissent implicitly acknowledges 'a determination' can take place after sentencing[.]"). There is no tension. The Majority essentially ignores my conclusion that the operation of this Rule is ambiguous, and I agree that there can be "more than one 'determination' of the amount and method of payment of costs[.]" *Id.*

Additionally, I foresee no issue with trial judges declining to waive or reduce costs without sufficient proof. This case was presented as involving "hopeless poverty," Lopez's Brief at 3, but the trial court did not make any kind of finding in that regard. *See* N.T., 04/27/2018, at 30-31. Nothing in this opinion is meant to suggest that in less-than-clear cases of hopeless indigency that the judge is obligated to make detailed findings of an ability to pay.