J-A02033-18

2018 PA Super 98

COMMONWEALTH OF PENNSYLVANIA,

Appellee

v.

GREGORY THOMAS MAUK,

Appellant

IN THE SUPERIOR COURT
OF
PENNSYLVANIA

No. 461 WDA 2017

Appeal from the Order entered February 20, 2017,
in the Court of Common Pleas of Cambria County, Criminal Division, at
No(s): CP-11-CR-0001033-2009, CP-11-CR-0001034-2009, CP-11-CR-
0001035-2009, CP-11-CR-0001036-2009, CP-11-CR-0001037-2009, CP-
11-CR-0001038-2009, CP-11-CR-0001039-2009, CP-11-CR-0001040-
2009, CP-11-CR-0001041-2009, CP-11-CR-0001042-2009, CP-11-CR-
0001043-2009, CP-11-CR-0001044-2009 & CP-11-CR-0001045-2009.

BEFORE:  BOWES, J., OLSON, J., and KUNSELMAN, J.

OPINION BY KUNSELMAN, J.:                    **FILED APRIL 26, 2018**

Gregory Mauk argues that the trial court violated his constitutional rights

by sentencing him to two weeks in prison for indirect criminal contempt.  The

Commonwealth claims that this appeal is moot, because the trial court freed

Mr. Mauk eleven days later.  In the alternative, it argues Mr. Mauk committed

civil contempt; thus, the Commonwealth sees no constitutional flaws.  Mr.

Mauk responds that this appeal is properly before us, because (1) the trial

court's violations might otherwise evade appellate review, and (2) an ongoing

restitution order leaves him susceptible to future, unconstitutional

imprisonment. We find all of Mr. Mauk's arguments persuasive; therefore, we vacate the trial court's February 20, 2017 Order.

Mr. Mauk has been under an order to pay restitution, court costs, and fines since September of 2010, when he pleaded guilty to various theft-related offenses. Mr. Mauk missed several of his court payments in 2016, so the Commonwealth summoned him before the trial judge who presides over costs-and-fines hearings in Cambria County. The trial judge treated Mr. Mauk the same as she does all alleged contemnors.

On December 21, 2016, before calling Mr. Mauk's case, the trial judge had the deputy read the names of everyone present who had failed to make timely payments after being previously held in contempt. Thirty-five people were brought to the bar, and the judge ruled "all of you who are in front of me now, failed to purge the conditions of your contempt." N.T., 12/21/16, at 8. The judge then remanded them into the sheriff's custody until she determined their sentences, based on the amount of payments they had made, if any.

Next, the judge called those with no prior contempt findings, including Mr. Mauk, to ask why they had failed to make timely payments. When she reached Mr. Mauk's case, the trial judge found him in contempt and sentenced

him to two weeks in the Cambria County Prison. The judge suspended his sentence, however, contingent on Mr. Mauk timely "paying January and February's payments of $150 per month." N.T., 12/21/16, at 11.

Mr. Mauk missed both deadlines and, therefore, had to reappear before the court on February 20, 2017. That day, prior to entering the courtroom, Mr. Mauk made both overdue payments and an advanced payment for March. Once in court, the trial judge again conducted a group sentencing, and Mr. Mauk found himself convicted *en masse*, alongside 53 other alleged contemnors. The judge told them:

> Because you failed to purge your contempt, you are incarcerated to two weeks in prison. Ms. Clark of the Public Defender's Office will – you'll be held in a holding cell downstairs. If anybody has a disagreement that their payments were not made, in other words – well, a couple of months ago we had an individual where there was an error where he had made his payments on time and they had not been credited correctly.
>
> So Ms. Clark will have an opportunity to speak with you only if you feel there was an error as to payment. Other than that, you all failed to purge the condition of your contempt and you're remanded to jail for two weeks, and so the sheriff's deputies are going to collectively escort you all to the holding cell.
>
> You'll have an opportunity to speak to your counsel downstairs. You cannot address the court at this time. Everybody who is in front of me addressed the court at the time of the contempt hearing. Sheriff's deputies?

N.T., 2/20/17, at 8-9.

The deputies jailed them all, and the judge memorialized Mr. Mauk's sentence in the February 20, 2017 Order. Ten days later, with the assistance of counsel, Mr. Mauk filed a notice of appeal to this Court, and, simultaneously, filed a "Petition for Writ of Habeas Corpus and/or Motion for a Bond Hearing" in the trial court. The judge granted the writ on March 3, 2017 and set him free.

On appeal, Mr. Mauk challenges the constitutionality of the February 20, 2017 proceeding. The Commonwealth raises a question of mootness due to the trial court's March 3, 2017 grant of *habeas corpus* relief. These are both questions of law. Therefore, our scope of review is plenary; our standard is *de novo*. **Snead v. Society for Prevention of Cruelty to Animals of Pennsylvania**, 985 A.2d 909, 912 (Pa. 2009).

As a threshold matter, the Commonwealth and the trial court claim that Mr. Mauk's constitutional "issue need not be addressed as it was rendered moot by the Court's granting of Mauk's Petition for *Habeas Corpus*." Trial Court Opinion, 5/22/17, at 4. They are incorrect.

"As a general rule, an actual case or controversy must exist at all stages of the judicial process, or a case will be dismissed as moot." **In re M.B.**, 101 A.3d 124, 127 (Pa. Super. 2014), *quoting* **In re D.A.**, 801 A.2d 614, 616 (Pa. Super. 2002). However, the **In re D.A.** court went on to say:

> this Court will decide questions that otherwise have been rendered moot when one or more of the following exceptions to the mootness doctrine apply: 1) the case involves a question of great public importance, 2) the question presented is capable of repetition and apt to elude appellate review, or 3) a party to the controversy will suffer some determinant due to the decision of the trial court.

*In re D.A.*, 801 A.2d 614, 616 (Pa. Super. 2002).

In the context of contempt proceedings, the exception to the mootness doctrine is even clearer: when "the trial court acts beyond its authority by failing to afford contemnors their procedural due process rights, the appeal will not be considered moot." *Ingebrethsen v. Ingebrethsen*, 661 A.2d 403, 404 (Pa. Super 1995). The trial court's class-action-like approach to costs-and-fines hearings substantially breached the alleged contemnors' due process rights. We therefore address the merits of Mr. Mauk's argument.

The parties disagree as to the type of contempt that led to Mr. Mauk's confinement. The type of contempt dictates the number and nature of the alleged contemnors' procedural rights. Mr. Mauk says the trial court held him in indirect criminal contempt on February 20, 2017 and that, as a result, his full array of constitutional rights as a criminal defendant applied. The Commonwealth and the trial court, on the other hand, view the February 20, 2017 events as the indisputable and automatic result of Mr. Mauk's violation of the court's December 21, 2016 order, which held him in civil contempt and provided a purge condition. Thus, the Commonwealth takes the position that

no process at all was due to Mr. Mauk and the 53 others that day. Clearly, they received none.

At what the Commonwealth called a "purge hearing" on February 20, 2017, the trial court did not allow any defendants to be heard,[1] to cross examine the court clerks who accused them of willful non-payment, or to have assistance of counsel.[2] Indeed, the trial judge told them they would not "have an opportunity to speak to [their] counsel" until they were "downstairs" – *i.e.*, *after* she had already sentenced them. N.T., 2/20/17, at 8. She also made clear that "[y]ou cannot address the court at this time." ***Id.*** This high-speed sentencing violates the Due Process Clause of the Fourteenth Amendment, for it has been said, "[T]he fundamental requisite of due process of law is the opportunity to be heard." ***Grannis v. Ordean***, 234 U.S. 385, 394 (1914).

---

[1] The Fourteenth Amendment to the Constitution of the Unite States provides, in relevant part:

> No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

[2] The Sixth Amendment to the Constitution of the United States provides:

> In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence [*sic*].

Process is due in all costs-and-fines proceedings. In **Bearden v. Georgia**, 461 U.S. 660 (1983), Justice Sandra Day O'Connor made clear that a court may not constitutionally imprison someone for nonpayment of court costs and fines alone. Instead, it must be proved that the person "has willfully refused to pay the fine or restitution when he has the means to pay . . . " **Id**. at 668. To decide if a refusal to pay is willful, the finder of fact must examine the totality of the defendant's life circumstances. If one's effort to secure the funds owed was made in good faith, any nonpayment is excused. In other words, contempt has a *mens rea* element of specifically intending to defy the underlying court order, and impossibility of performance of the court-ordered act is an absolute defense. Intent to defy an order may be inferred from a defendant's unreasonable inaction. Thus, the "failure to make sufficient bona fide efforts to seek employment or borrow money in order to pay the fine or restitution may reflect an insufficient concern for paying the debt [a defendant] owes to society for his crime." **Id**.

Judges must hold separate hearings for each alleged contemnor to ascertain whether any noncompliance flowed from (a) deliberate disregard of the court's order or (b) circumstances beyond the defendant's control. This must be done every time someone appears or reappears for a costs-and-fines proceeding, because the person's financial situations may have changed since the last time she or he was before the court.

Cambria County's process for contempt missed this critical requirement entirely. This mass incarceration presumed that all failures to pay arose from the alleged contemnors' deliberate disregard of the court's orders. While some untimely payments may have been attributable to such willful disregard, it does not follow that all unfulfilled legal obligations were willful. Rather, the possibility remained that events beyond an individual's control had intervened and rendered continued compliance impossible. In short, Mr. Mauk never had a chance to explain the circumstances that prevented him from making timely payments. For the court to assume a willful violation eliminated the *mens rea* element of contempt altogether and treated the contempt as a strict liability offense. This was error.

Every time a defendant appears "for failure to pay a fine or restitution, a sentencing court must inquire into the reasons for the failure to pay." **Bearden**, 461 U.S. at 672. Once a defendant's reasons for nonpayment are discerned, as Justice O'Connor observed, the judge's options for sentencing are as follows:

> If the probationer willfully refused to pay or failed to make sufficient bona fide efforts legally to acquire the resources to pay, the court may . . . sentence the defendant to imprisonment within the authorized range of its sentencing authority. If the probationer could not pay despite sufficient bona fide efforts to acquire the resources to do so, the court must consider alternative measures of punishment other than imprisonment. Only if alternative measures are not adequate to meet the State's interests in punishment and deterrence may the court imprison a probationer who has made sufficient bona fide efforts to pay. To do otherwise would deprive the probationer of his constitutional freedom simply because, through no fault of his own, he cannot

pay the fine. Such a deprivation would be contrary to the fundamental fairness required by the Fourteenth Amendment.

*Id*. at 672-73.

Although **Bearden** involved probation revocation proceedings, we see no reason why its constitutional mandate does not likewise inure in contempt proceedings, and the Commonwealth did not argue that **Bearden** is limited to only probation hearings. We now extend its logic to contempt proceedings by analogy.

Thus, we hold that a trial court must individually question a defendant about his or her current circumstances, before sending that defendant to jail, because "there can be no equal justice where the kind of trial a man gets depends on the amount of money he has." **Griffin v. Illinois**, 351 U.S. 12, 19 (1959) (Black, J., plurality opinion).[3] In addition, if imprisonment is a possibility, each defendant must have a *timely* opportunity to consult with counsel, *i.e.*, before he appears before the judge.

Procedurally, the trial court's mass sentencing of Mr. Mauk and others was akin to that in **Altemose Construction Co. v. Building Trades Council**, 296 A.2d 504 (Pa. 1972). There, a labor dispute turned riotous, so a trial

---

[3] Although Mr. Mauk has not raised the issue, mass sentencings may likewise implicate Equal Protection concerns. **See Tate v. Short**, 401 U.S. 395 at 398-399 (1971) (citations omitted), (relying on the Equal Protection Clause of the Fourteenth Amendment, the Supreme Court of the United States held that "the statutory ceiling placed on imprisonment for any substantive offense [must] be the same for all defendants irrespective of their economic status.")

judge ordered the strikers to remain a certain distance away from the company's grounds. When 125 workers violated that injunction, the judge held them all in contempt and sentenced them collectively. On appeal, the company and the union argued the nuances of whether the judge had found them in indirect criminal or civil contempt.

The Supreme Court of Pennsylvania unanimously reversed the trial court's judgment of contempt and said we need not:

> decide here as between civil and criminal, for in either case the proceedings were fatally defective. The long-standing procedural safeguards attendant upon civil contempt proceedings have been . . . stated [as] a . . . rule to show cause why an attachment should not issue, answer and hearing, rule absolute (arrest), hearing on the contempt citation, adjudication of contempt. . . . [A]rrest and imprisonment of a party in a civil proceeding for contempt in violating an order or decree cannot issue without such previous notice as will afford [one] an opportunity of being heard . . . [W]e think it clear that "opportunity of being heard" embraces more than opportunity, after being first arrested and jailed and without time to consult with counsel if desired, to show cause why one should not be held in contempt. The commencement of the contempt proceeding by arrest and imprisonment and the summary nature of the proceeding as conducted was consonant only with a *direct* criminal contempt.
>
> If, on the other hand, the proceeding is to be viewed as one involving *indirect* criminal contempt, the defendants were entitled to bail, to be notified of the accusations against them and a reasonable time to make a defense . . . Nothing in the [contemnors'] reprehensible disobedience [to] the court's injunction operated to deprive them of . . . the constitutional guarantees of due process of law. As Judge Porter once said, speaking for the Superior Court in another context, "Promptness in the administration of justice is commendable, but haste which disregards fundamental principles may prove disastrous". **See Commonwealth v. Gabel**, 79 Pa.Super. 59, 62 [(1922)].

*Altemose,* at 518–19 (emphasis in original) (some citations omitted). We appreciate that a trial court's docket is heavy, but the procedural shortcuts for costs-and-fines hearings that occurred in the court of common pleas were constitutionally "disastrous." *Gabel*, *supra*.

Like *Altemose*, even if the trial court had sentenced Mr. Mauk for civil contempt, its refusal to give him an opportunity to explain his late payments did not comport with the Due Process Clause. And, all the more so if this was indirect criminal contempt. Either way, we find that mass sentencing violates the Due Process Clause *per se*. In fact, Mr. Mauk's case was more egregious than *Altemose*, where the mass sentencing was, at least, targeted at individuals who had violated the same underlying injunction. But, here, the trial court sentenced Mr. Mauk with 53 total strangers, who were there on completely unrelated matters. Just as in *Altemose*, the court's methodology was permissible only for *direct* criminal contempt, because it produced a mandatory, inescapable, two-week sentence. The facts of record clearly do not support a finding of *direct* criminal contempt, nor does the Commonwealth contend that direct criminal contempt occurred. And whether the court in this matter sentenced Mr. Mauk for civil or indirect criminal contempt is irrelevant, because the contempt proceeding of February 20, 2017 occurred without any of the procedural protections that the Due Process Clause of the Fourteenth Amendment requires for both types of contempt, as mandated in *Bearden* and in *Altemose*.

Moreover, we note that the proceedings in the trial court disregarded the Pennsylvania Rules of Criminal Procedure, which provide that "[a] court shall not commit the defendant to prison for failure to pay a fine or costs unless it appears **after hearing** that the defendant **is financially able to pay** the fine or costs." Pa.R.Crim.P. 706(a) (emphasis added). This Rule is in place to safeguard an alleged contemnor's constitutional rights discussed above. Hence, trial judges are to observe Pa.R.Crim.P. 706(a) for each and every person that appears before them on allegation of unpaid fines and costs, each time the individual reappears. No such hearing occurred on February 20, 2017.

Because the process employed below ran afoul of both the Due Process Clause of the Fourteenth Amendment and Pa.R.Crim.P. 706(a), we grant the relief that Mr. Mauk has requested on appeal.

February 20, 2017 Order vacated. Jurisdiction relinquished.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 4/26/2018

- 12 -