IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re: Condemnation by Sunoco : 
Pipeline L.P. of Permanent and : 
Temporary Rights of Way for the : 
Transportation of Ethane, Propane, : 
Liquid Petroleum Gas, and other : 
Petroleum Products in theTownship : 
of Union, Huntingdon County, : 
Pennsylvania, Over the Lands of : No. 1561 C.D. 2018
Stephen Gerhart and Ellen S. Gerhart : Submitted: February 8, 2019
 : 
Appeal of: Ellen S. Gerhart :

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
          HONORABLE PATRICIA A. McCULLOUGH, Judge
          HONORABLE ELLEN CEISLER, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY PRESIDENT JUDGE LEAVITT                    FILED: May 8, 2019

Ellen S. Gerhart appeals an order of the Court of Common Pleas of Huntingdon County (trial court) holding her in contempt of court, for which it sentenced her to serve two to six months in prison and imposed a $2,000 fine. Gerhart argues that the trial court improperly categorized this civil contempt matter as indirect criminal contempt, which resulted in an illegal and excessive prison sentence. We affirm.

In 2015, Sunoco Pipeline L.P. (Sunoco) filed a declaration of taking seeking a permanent easement of 1.72 acres and a temporary work area easement of 1.44 acres over portions of Stephen and Ellen Gerhart's 27-acre property in Union Township, Pennsylvania. Sunoco acquired the easements for a construction project known as the Mariner East Pipeline Project. The Gerharts filed preliminary objections to the declaration of taking, which the trial court overruled. The Gerharts

appealed to this Court, and it affirmed the trial court in *In re Condemnation by Sunoco Pipeline L.P.* (Pa. Cmwlth., No. 220 C.D. 2016, filed May 15, 2017), *petition for allowance of appeal denied*, 179 A.3d 456 (Pa. 2018).

Following this Court's decision, Sunoco sought a preliminary injunction, alleging that the Gerharts were interfering with Sunoco's tree clearing activities by installing platforms for "tree-sitters." On June 28, 2017, the trial court issued the preliminary injunction, which stated as follows:

1. [The Gerharts] shall immediately, but in no event more than 48 hours after issuance of this Order, remove all structures, tree platforms, tents, vehicles, equipment, and other objects placed within the easement granted to [Sunoco]. Any items remaining within the easement thereafter shall be viewed as abandoned illegal obstructions and shall be removed and disposed of by [Sunoco] or at the direction of [Sunoco]. Any items which cannot be readily removed may be destroyed by [Sunoco].

2. Unless their presence on the easement is consented to by [Sunoco], all persons are enjoined and restrained, pending further order of this Court, from entering, or being on the easement granted to [Sunoco] until the pipelines are installed and all remediation and restoration efforts are complete.

3. [The Gerharts], and all persons acting in concert with them, as well as all persons on property owned by [the Gerharts] or in the vicinity thereof are hereby restrained and enjoined, pending further order of this Court, from barring, preventing, or otherwise interfering in any way with [Sunoco's] access to, and use of, the easement granted to [Sunoco] on [the Gerharts'] property.

4. [The Gerharts] and all persons acting in concert with them, as well as all persons on property owned by [the Gerharts], are hereby restrained and enjoined pending further order of this Court from barring, preventing, or otherwise interfering in any way with [Sunoco's] installation of pipelines within said easement.

2

5. [The Gerharts], and all persons acting in concert with them, as well as all persons on property owned by [the Gerharts] or in the vicinity thereof are restrained and enjoined from creating conditions on the right of way that create a danger to themselves and others.

6. [bond ordered]

7. This Order shall remain in effect in full force until such time as this Court specifically orders otherwise.

Trial Court Order, 6/28/2017, at 1-2; Reproduced Record at 1-2 (R.R. ___). The Gerharts appealed the preliminary injunction to this Court but later filed a praecipe to discontinue their appeal. *In re Condemnation by Sunoco Pipeline L.P.* (Pa. Cmwlth., No. 1026 C.D. 2017, filed November 14, 2017).

On April 30, 2018, Sunoco filed a "Petition for Determination of Indirect Criminal Contempt" against Ellen Gerhart. R.R. 98. The petition alleged that Gerhart had entered the easement area on numerous occasions in 2018 in willful defiance of the preliminary injunction. The trial court held a hearing on May 9, 2018, at which time Gerhart's bail was set at $25,000. As a condition of bail, Gerhart was ordered to comply with the preliminary injunction.

On July 27, 2018, Sunoco filed a petition to revoke Gerhart's bail for refusing to comply with the preliminary injunction. To interfere with construction, Gerhart stood in front of moving construction vehicles; ignited fires next to the construction fence; threw ground meat on workers; and baited the area with food to entice wild animals to the construction site. The trial court ordered a bench warrant for the arrest of Gerhart, and she was incarcerated that same day. On July 30, 2018, the trial court reissued bail at $25,000 cash and scheduled the indirect criminal contempt hearing for August 3, 2018. Because Gerhart did not post bail, she remained incarcerated.

3

At the hearing, Heather Rae Martin, a security officer employed at the construction site from April 5, 2018, to July 7, 2018, testified. She stated that Gerhart routinely entered the construction site and stood in front of equipment to prevent personnel from working. If workers were cutting trees, Gerhart would stand nearby so they would have to stop. If workers were cutting logs, Gerhart would sit on the logs. If the workers moved to another tree or log, Gerhart would follow them.

Martin testified that every security officer wears a body camera and carries video equipment. When Gerhart entered the easement area, security officers advised her of her trespass, that it was unsafe to be in the construction area and asked her to leave. At "no point [did they] physically engage her." Notes of Testimony, 8/3/2018, at 6 (N.T. __); R.R. 15. If Gerhart came too close, the workers had to stop because "it would be worrying about her safety." *Id.* Videos of security officers were introduced into evidence showing Gerhart within the easement sitting on logs and stepping in front of moving equipment.

Martin explained that when Sunoco placed nylon fencing around the easement, Gerhart began throwing food over the fencing, such as meat and eggs. She spread cat litter, which produced a stench. Gerhart set up a "baiting station" with berries, vegetables, suet and peanut butter. N.T. at 24; R.R. 33. The food attracted bears to the site, and Martin presented video of several bears in the easement.

John Bricker, Sunoco's project coordinator and security supervisor, also testified. He began working at Sunoco's site on April 2, 2018, and personally encountered Gerhart three to four times a week. Once, she held a rock and acted "like she was going to throw [the] rock at [him, but] laughed and threw it at a piece of equipment that was next to [him]." N.T. 34; R.R. 43. She also "threw spoiled

4

milk on [him]." N.T. 35; R.R. 44. Once, she pulled up stakes marking the easement's boundary line and threw them.

On several occasions, Gerhart lit fires close to the nylon fencing. Bricker presented a video of her lighting a fire near gasoline pumps. She asked him, "how does it feel to be next to something that could explode[?]" N.T. 37; R.R. 46. She also approached the fencing with a bottle that appeared to have a wick in it, like a "Molotov cocktail." N.T. 35; R.R. 44. She put it on a tree stump and attempted to light it. When it did not ignite, she "made a fire on the stump, placed that item on it and let it burn." *Id*.

Rick Macklem, a Pennsylvania Game Warden, testified about Gerhart's "baiting for bears" with suet blocks and grease smeared on trees next to Sunoco's fencing. N.T. 52; R.R. 61. Some of the suet and grease was spread on guard stations within the easement. Macklem warned Gerhart that putting out food to attract bears is unlawful because it causes a danger to the public. When she continued to do so, he issued a citation to her.

Gerhart's sole witness was her daughter, Elise Gerhart. She testified that bears are common in the area. However, she often goes for walks on the property and has never seen food near the easement area.

The trial court found that Gerhart had purposefully violated the preliminary injunction on multiple occasions. The trial court sentenced her to two to six months in prison and imposed a $2,000 fine. Gerhart filed post-sentence motions, but they were denied by the trial court. Gerhart then appealed to this Court.[1]

---

[1] Our review of an appeal of a contempt order is limited to a review of whether the trial court abused its discretion or committed an error of law. *Jackson v. Hendrick*, 764 A.2d 1139, 1142 n.4 (Pa. Cmwlth. 2000).

On appeal, Gerhart raises two issues. First, she contends the trial court erred in treating the matter as indirect criminal contempt, when it was actually a civil contempt proceeding. Accordingly, her criminal sentence was unlawful. Second, she contends that her sentence for indirect criminal contempt was excessive.

On January 28, 2019, Sunoco filed an application for post-submission communication pursuant to Pennsylvania Rule of Appellate Procedure 2501[2] to file a motion to dismiss for mootness. Generally, Rule 2501 relates to "'communications' such as briefs, memoranda or letters [and] does not apply to applications for relief." *Deutsche Bank National Company v. Butler*, 868 A.2d 574, 577 (Pa. Super. 2005). However, Pennsylvania Rule of Appellate Procedure 1972(a)(4) does authorize "any party" to move "[t]o dismiss for mootness." PA. R.A.P. 1972(a)(4). The issue of mootness may be raised at any time because "an actual case or controversy must exist at all stages of the judicial or administrative process." *Pennsylvania Liquor Control Board v. Dentici*, 542 A.2d 229, 230 (Pa. Cmwlth. 1988).

---

[2] It provides:

> (a) General rule. After the argument of a case has been concluded or the case has been submitted, no brief, memorandum or letter relating to the case shall be presented or submitted, either directly or indirectly, to the court or any judge thereof, except upon application or when expressly allowed at bar at the time of the argument.
>
> (b) Change in status of authorities. If any case or other authority relied upon in the brief of a party is expressly reversed, modified, overruled or otherwise affected so as to materially affect its status as an authoritative statement of the law for which originally cited in the jurisdiction in which it was decided, enacted or promulgated, any counsel having knowledge thereof shall file a letter, which shall not contain any argument, transmitting a copy of the slip opinion or other document wherein the authority relied upon was affected.

PA. R.A.P. 2501.

We begin with Sunoco's motion to dismiss for mootness, to which Gerhart has filed an answer. Sunoco asserts that Gerhart's sentence expired on January 22, 2019, and, thus, her appeal is moot. In response, Gerhart acknowledges that her sentence has been served but notes that she was also ordered to pay a $2,000 fine, which is outstanding. An appeal from a completed sentence is not moot if collateral consequences remain or if the question presented is capable of repetition yet evades review. Gerhart claims both apply to her case. The outstanding fine may subject her to collateral criminal consequences, and incarceration for indirect criminal contempt may be so short that it will evade appellate review.

Appellate courts do not decide moot questions. *In re Gross*, 382 A.2d 116, 119 (Pa. 1978). In *Commonwealth v. Kelly*, 418 A.2d 387 (Pa. Super. 1980), the Superior Court explained that once a sentence is served, a challenge to "the lower court's interpretation of [the] sentence" is moot. *Id*. at 388. However, a challenge to the legality of the sentence is not moot if there is a "possibility" of "collateral civil or criminal consequences" because of the conviction. *Commonwealth v. King*, 786 A.2d 993, 996 (Pa. Super. 2001).

The Superior Court addressed the possibility of collateral criminal consequences of an unpaid fine in *Commonwealth v. Mauk*, 185 A.3d 406 (Pa. Super. 2018). There, the defendant pled guilty to theft-related offenses and was ordered to pay restitution, court costs and fines. Six years later, with the defendant's debt in arrears, the trial court found him in indirect criminal contempt and sentenced him to 14 days in prison. The defendant appealed, and the Commonwealth argued his appeal was moot because his sentence had been served. The defendant argued otherwise listing two reasons. First, the short sentence meant that the trial court's order could evade appellate review. Second, his restitution remained in arrears,

7

leaving him susceptible to future contempt charges and imprisonment. The Superior Court agreed with the defendant on both counts.

Likewise, here, Gerhart challenges the legality of her sentence as well as the outstanding fine, which raises the "possibility" of future criminal consequences. As was the case for the defendant in *Mauk*, Gerhart could be incarcerated for the fine's nonpayment. We conclude that Gerhart's appeal is not moot and will consider the merits of her appeal.

In her first issue, Gerhart contends the trial court erred in holding that she committed indirect criminal contempt, which protects the interest of the public. Gerhart contends that only the private interest of Sunoco was involved. At most, therefore, she committed civil contempt. Her sentence was illegal because an individual held in civil contempt must be able to avoid incarceration by purging the contempt.

Sunoco responds that indirect criminal contempt was the appropriate sanction for willfully violating the preliminary injunction. Gerhart was represented by counsel, received all the procedural protections due under the law and, thus, the sentence imposed by the trial court was proper.

This Court has explained the difference between civil and criminal contempt as follows:

> The courts have always been possessed of inherent power to enforce their orders and decrees by imposing sanctions. If the dominant purpose of the court is remedial, to coerce compliance with the court's previous order and in some cases to compensate the complainant for losses suffered, the contempt proceeding is classified as civil. If the dominant purpose is to vindicate the dignity and authority of the court and to protect the interest of the general public by punishing the contemnor, the proceeding is for criminal contempt. Criminal contempt is a crime, and those accused of indirect criminal contempt, that which is committed

8

outside the presence of the court, are provided with safeguards according to statute and to normal criminal procedures.

*Borough of Beaver v. Steckman*, 728 A.2d 418, 421 (Pa. Cmwlth. 1999) (internal citations omitted). Indirect criminal contempt pertains to the violation of a court order. Section 4136(a) of the Judicial Code states, in relevant part, as follows:

> (a) General rule**.--**A person charged with indirect criminal contempt for violation of a restraining order or injunction issued by a court shall enjoy:
>
> (1) The rights to bail that are accorded to persons accused of crime.
>
> (2) The right to be notified of the accusation and a reasonable time to make a defense, if the alleged contempt is not committed in the immediate view or presence of the court.

42 Pa. C.S. §4136(a). The Supreme Court has explained:

> Indirect criminal contempt is a violation of a court order that occurred outside the court's presence. *To prove indirect criminal contempt, evidence must be sufficient to establish*: the court's *order was definite, clear*, specific, and leaving no doubt in the person to whom it was addressed of the conduct prohibited; the *contemnor had notice of the order*; the act constituting the *violation was volitional*; and the *contemnor acted with wrongful intent*.

*Commonwealth v. McMullen*, 961 A.2d 842, 849 (Pa. 2008) (internal citations omitted) (emphasis added).

The preliminary injunction named Gerhart, and her notice of the order is undisputed. The preliminary injunction prohibited her from "entering, or being on the easement" or "interfering in any way with [Sunoco's] access to, and use of, the easement …." Trial Court Order, 6/28/2017, ¶¶2-3; R.R. 1-2. The terms of the order are clear. Notably, Gerhart does not challenge the trial court's findings she

9

violated the preliminary injunction beyond a reasonable doubt by committing the following actions:

1. [S]he placed workers in danger by setting fires near the easement that required actions by workers to extinguish;

2. [S]he entered onto the easement and physically obstructed workers which caused safety concerns;

3. [S]he entered onto the easement and obstructed the movement of heavy equipment causing safety concerns and forcing work to cease to prevent injury to her;

4. [S]he spread rancid materials on trees and on the ground in vicinity of the easement to, in her words, attract wild animals to the construction site;

5. [S]he threw a large stick or tree limb onto the easement in the vicinity of workers;

6. [S]he removed survey markers from the easement and threw them from the easement onto her property; and

7. [S]he constructed an object from a plastic bottle (which appeared on video to be an incendiary device), and ignited the device at the boundary of the easement in an attempt to place workers in fear of being injured.

Trial Court Op., 8/20/2018, at 4 (denying post-sentence motions). The trial court held that Gerhart "was acutely aware of the mandates of the [preliminary injunction] and made a conscious choice to challenge the authority of the [trial court]." *Id*. at 5. "The criminal activity of [Gerhart] relates to her violation of [the preliminary injunction], and her intentional disregard for the rule of law." *Id*. at 3. In sum, each element of indirect criminal contempt was satisfied. *McMullen*, 961 A.2d at 849.

There is no requirement that the conduct in violation of an injunction be directed against the public, as Gerhart suggests. *Id.* at 850 ("[I]ndirect criminal contempt is an offense against the court's inherent authority, not necessarily against

10

the public."). In any event, the Pennsylvania Public Utility Commission (PUC) has concluded that the Mariner East Pipeline Project serves a public need and will advance the public interest.[3] We reject Gerhart's first claim of error.

In her second issue, Gerhart argues that her sentence for indirect criminal contempt was excessive. She concedes that the trial court had the authority to impose a sentence of up to six months but argues that the sentence was excessive under Pennsylvania's Sentencing Guidelines, 204 Pa. Code §§303.1-303.18(c).[4] Sunoco responds that the trial court has broad discretion when imposing a sentence, and that the Sentencing Guidelines are irrelevant.

The Sentencing Guidelines exempt indirect criminal contempt. Section 303.1(b) states:

> *The sentencing guidelines do not apply to sentences imposed as a result of the following*: accelerated rehabilitative disposition; disposition in lieu of trial; direct or *indirect contempt of court*; violations of protection from abuse orders; revocation of probation, intermediate punishment or parole.

204 Pa. Code §303.1(b) (emphasis added). Despite this, Gerhart asks the Court to consider whether her acts are of the same character as those listed in the basic sentencing matrix. 204 Pa. Code §303.16(a). We decline to do so.

In *McMullen*, the Supreme Court held that the courts "have the authority to punish individuals in violation of their orders" and "the legislature cannot create a form of indirect criminal contempt and restrict a court's ability to

---

[3] *See In re Condemnation by Sunoco Pipeline* (Pa. Cmwlth., No. 220 C.D. 2016, filed May 15, 2017), where this Court held that it did not have the authority to second guess the PUC's award of a certificate of public convenience to Sunoco.

[4] The Sentencing Guidelines "are promulgated by the Pennsylvania Commission on Sentencing … a legislative agency created by the General Assembly." *Commonwealth v. Smith*, 186 A.3d 397, 400 (Pa. 2018).

11

punish individuals who commit contempt of court." *McMullen*, 961 A.2d at 849-50. The legislature generally may determine the appropriate punishment for criminal conduct but "indirect criminal contempt is an offense against the court's inherent authority …." *Id.* The trial court was not restricted in any way by the Sentencing Guidelines when deciding Gerhart's sanction.

The trial court had the authority to set the sentence, absent an abuse of discretion. *Jackson*, 764 A.2d at 1142 n.4. Gerhart has neither established nor argued an abuse of discretion. Thus, we reject her second claim of error.

For the above reasons, the order of the trial court is affirmed.

_____
MARY HANNAH LEAVITT, President Judge

Judge Fizzano Cannon did not participate in the decision of this case.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re: Condemnation by Sunoco    :
Pipeline L.P. of Permanent and    :
Temporary Rights of Way for the    :
Transportation of Ethane, Propane,    :
Liquid Petroleum Gas, and other    :
Petroleum Products in theTownship    :
of Union, Huntingdon County,    :
Pennsylvania, Over the Lands of    :  No. 1561 C.D. 2018
Stephen Gerhart and Ellen S. Gerhart   :
   :
Appeal of: Ellen S. Gerhart    :

# **O R D E R**

AND NOW, this 8th day of May, 2019, (1) the Application for Post-Submission Communication Filed by Sunoco Pipeline, L.P. (Sunoco) seeking permission to file a Motion to Dismiss for Mootness is GRANTED, albeit unnecessarily. (2) The Motion to Dismiss for Mootness filed by Sunoco is DENIED. (3) The order of the Court of Common Pleas of Huntingdon County, dated August 3, 2018, is hereby AFFIRMED.

_____
MARY HANNAH LEAVITT, President Judge

In Re: Condemnation by Sunoco          :
Pipeline L.P. of Permanent and         :
Temporary Rights of Way for the        :
Transportation of Ethane, Propane,     :     No.  1561 C.D. 2018
Liquid Petroleum Gas, and other        :
Petroleum Products in the Township     :     Submitted: February 8, 2019
of Union, Huntingdon County,           :
Pennsylvania, Over the Lands of        :
Stephen Gerhart and Ellen S. Gerhart   :
                                       :
Appeal of:  Ellen S. Gerhart           :


BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
           HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE ELLEN CEISLER, Judge


***OPINION NOT REPORTED***

CONCURRING OPINION
BY JUDGE McCULLOUGH                              FILED:  May 8, 2019


I write separately to restate my continued belief that the underlying catalyst in this series of unfortunate events, the Mariner East Pipeline Project, is an unlawful undertaking and taking of private property, for Sunoco "failed to obtain the requisite certificate of public convenience [] from the Public Utility Commission [] and therefore lacked the statutory authorization necessary to condemn private property under Section 1104 of the Public Utility Code,  66 Pa.C.S. §1104." *In re Condemnation by Sunoco Pipeline L.P.*, 165 A.3d 1044, 1053 (Pa. Cmwlth. 2017), *appeal denied*, 179 A.3d 455 (Pa. 2018) (McCullough, J., concurring) (*Sunoco I*); *see In re Sunoco Pipeline, L.P.*, 143 A.3d 1000, 1028-29 (Pa. Cmwlth.) (en banc),

*appeal denied*, 164 A.3d 485 (Pa. 2016) (McCullough, J., dissenting) (*Sunoco II*). Realizing that this view did not constitute a majority of the Court in *Sunoco I* and *Sunoco II*, and that our Supreme Court denied discretionary review in both cases, I am constrained to agree with the ultimate result reached by the Majority in this case.

_____
PATRICIA A. McCULLOUGH, Judge